# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**HIRAN RODRIGUEZ,**

PLAINTIFF, appearing *Pro Se* and *Sui Juris*

V.

**META PLATFORMS, INC., *ET AL.***

DEFENDANTS.

CIVIL ACTION
NO. 2:25-cv-00197

SECTION A
JUDGE JAY C. ZAINEY

DIVISION 2
MAGISTRATE JUDGE
DONNA PHILLIPS CURRAULT

JURY TRIAL REQUESTED

## PLAINTIFF'S MOTION TO COMPEL DISCLOSURE OF ENTERPRISE SURVEILLANCE INFRASTRUCTURE, IDENTIFY AND TERMINATE TARGETED OPERATORS, AND FOR COMPREHENSIVE RELIEF FOR ONGOING HARASSMENT, RETALIATION, AND CONSTITUTIONAL INJURY

NOW INTO COURT, through undersigned, comes Plaintiff, Hiran Rodriguez, who respectfully moves this Honorable Court for emergency relief compelling disclosure of the covert surveillance system known as the "shadow stream," the immediate identification and termination of all operators who used publicly regulated or enterprise-integrated assets to stalk, defame, or intimidate Plaintiff, and for comprehensive relief under Rules 26, 37, and 60 of the Federal Rules of Civil Procedure, and applicable constitutional and statutory authorities.

This motion is necessitated by the repeated use of trains, ambulances, aircraft, and software SDK infrastructure across multiple named Defendants to facilitate psychological warfare, retaliation, and surveillance of Plaintiff. The operators of these assets remain shielded behind corporate and government intermediaries. Plaintiff now demands disclosure, accountability, and termination of these individuals—along with compensatory and punitive relief.

2

## I. INTRODUCTION AND SUMMARY

Plaintiff Hiran Rodriguez brings this motion seeking:

1. Immediate disclosure of the shadow stream surveillance infrastructure used by Defendants including Meta Platforms, Inc., LCMC Healthcare Partners, Kansas City Southern Railway, and others;

2. Judicially compelled identification and termination of Doe Defendants involved in operational use of ambulances, trains, and aircraft against Plaintiff;

3. Enforcement of all outstanding preservation notices and production of dispatch, telemetry, and surveillance logs;

4. Entry of comprehensive relief for constitutional violations, intentional infliction of emotional distress, and coordinated enterprise retaliation.

Defendants' continued use of this surveillance architecture has resulted in documented noise

assaults, proximity harassment, coordinated defamation, and ongoing psychological warfare, as

outlined in Exhibits A, E–G, and I.

## II. PATTERN OF ENTERPRISE SURVEILLANCE AND HARASSMENT

Plaintiff has documented a persistent, coordinated campaign of surveillance, harassment, and

proximity targeting involving the use of public service vehicles, commercial transport systems,

aircraft, and SDK-based application telemetry. These acts are not isolated, nor the result of mere

coincidence. They reflect an integrated infrastructure—herein referred to as the "shadow stream"

—used by Defendants across domains to track, monitor, and retaliate against Plaintiff.

This infrastructure has been deployed by multiple named Defendants, including but not limited

to:

- LCMC Healthcare Partners, LLC, through the unauthorized use of Ambulance Unit **#156**,

    recorded and photographed engaging in proximity surveillance near Plaintiff's location on

April 19, 2025 at 4:43 PM CDT. No medical emergency was evident; the unit made
multiple slow passes near known Plaintiff pathways. See EXHIBIT E-2.

- Kansas City Southern Railway Company, through its operation of Engine **#5673**, confirmed
  via timestamped video and photographic evidence to have engaged in nighttime proximity
  harassment near Plaintiff's residence on March 12, 2025 at 9:28 PM CDT. The presence of
  the engine was not incidentally scheduled—it was part of a pattern of retaliatory rail usage
  documented in **Rec. Doc. 80** and supplemented by forensic EXHIBIT G-1.

- LCMC Health helicopter assets and private aircraft operated by unknown parties were
  documented performing low-altitude, circling, or sudden-flyby activity above or near
  Plaintiff's location. Tail numbers include N16362 and MOJO30, with verified timestamps
  from April 16, 2025. These incidents are recorded in EXHIBIT I and correlate with known
  court activity and evidence production events.

- Meta Platforms, Inc. (including Facebook and Instagram), through persistent SDK
  surveillance embedded in Plaintiff's mobile applications, utilizing APIs and endpoints
  including graph.facebook.com, rupload.facebook.com, and edge-mqtt.facebook.com.
  Session logs confirm continuous outbound connections, behavioral telemetry, and remote
  audio/video transmission patterns without user initiation. See forensic reports in EXHIBITS
  D-1 through D-4.

- Additional entities, including Third District Volunteer Fire Department, Jefferson Parish Sheriff's Office, and X Corp., are implicated through ongoing proximity harassment using sirens, vehicle passes, and digital manipulation coinciding with court filing timelines.

These acts are not isolated incidents, but manifestations of a shared access architecture and coordinated data pool allowing Defendants, their agents, or unknown third-party contractors to:

- Access Plaintiff's real-time location, behavior, and communications;

- Appear with unnatural precision at key life moments to intimidate, disorient, or retaliate;

- Leverage official-looking assets (ambulances, trains, helicopters) to cloak misconduct behind institutional legitimacy;

- Participate in a cross-entity enterprise surveillance system used to suppress, shame, and destroy.

6

This conduct, taken as a whole, establishes a pattern of civil conspiracy, color of law abuse, and electronic intrusion that continues despite preservation demands and court filings.

## III. IDENTIFIED INCIDENTS AND DOE DEFENDANTS

Plaintiff formally designates the following John Doe Defendants as parties whose identities must be disclosed pursuant to Rule 26(a), Rule 37(a), and in furtherance of injunctive relief and monetary damages. Each of these individuals acted in furtherance of a coordinated enterprise surveillance system that resulted in actionable harm.

7

**John Doe Defendant #1**

**– LCMC Ambulance Operator (Unit #156)**

The driver or operator of LCMC Health Ambulance **Unit #156** observed on April 19, 2025, at

4:43 PM CDT, executing repeated proximity passes near Plaintiff at or near an Acura dealership.

No medical emergency or patient contact was observed. The vehicle's actions were coordinated,

non-random, and retaliatory. See EXHIBIT E-2.

**John Doe Defendant #2**

**– Additional LCMC Ambulance Operator(s)**

One or more unidentified personnel affiliated with LCMC Health EMS involved in similar

proximity harassment incidents documented in video surveillance between March and April

2025. Repeated siren patterns, pathing, and lingering behavior were observed consistent with

targeted behavioral intimidation.

**John Doe Defendant #3**

**– Train Operator (CN Engine #5673)**

The primary operator of Canadian National **Engine #5673** confirmed to be engaged in nighttime proximity activity near Plaintiff's residence on March 12, 2025, at 9:28 PM CDT. Evidence includes video, photographic stills, and vehicle identification numbers. *See* EXHIBIT G-1 and Rec. Doc. 80.

**John Doe Defendant #4**

**– CN Yard Dispatcher / Route Controller**

An individual responsible for issuing or authorizing the route taken by **Engine #5673**. This route did not correspond to normal operational timing and was executed in a manner consistent with retaliatory proximity harassment. The operator's presence coincided with Plaintiff's known legal filings and digital activities.

**John Doe Defendant #5**

**– Aircraft Operator (N16362)**

The pilot or responsible party operating tail number **N16362**, captured on April 16, 2025, executing a low-altitude flyover during a sensitive  evidentiary timeframe. See EXHIBIT I.

**John Doe Defendant #6**

**– Aircraft Operator (Callsign MOJO30)**

An unidentified aircraft or operator captured on the same day as Doe #5, performing a follow-up pass over Plaintiff's location, within hours of the **N16362** flyby. Suspected retaliatory coordination.

**John Doe Defendant #7**

**— Digital Surveillance Engineer / LiveOps Operator (Meta)**

An unknown agent acting within or on behalf of Meta Platforms, Inc., who maintained, accessed, or authorized the persistent telemetry collection from Plaintiff's devices using Meta SDK or LiveOps infrastructure. Evidence includes WebSocket logs, HAR captures, endpoint persistence, and unauthorized outbound video/audio triggers. See EXHIBITS D-1 through D-4 and EXHIBITS RVMP-0001 through RVMP-0002.

Each Doe Defendant is believed to have operated under or in concert with named entities— LCMC Health, CN/Kansas City Southern Railway, Meta Platforms, and others—through an integrated enterprise-level system of behavioral targeting and psychological retaliation.

Plaintiff reserves the right to amend the complaint to substitute actual names once disclosure is compelled and production is complete. Relief is sought now to compel identity, terminate employment, and issue preservation and production orders as required by Rule 37.

## IV. LEGAL BASIS FOR RELIEF AND COMPULSION OF DISCLOSURE

Plaintiff is entitled to the disclosure of all identities, access systems, telemetry logs, and operator records relevant to the above-documented incidents under the following controlling legal authorities:

### A. Rule 26(a)(1)(A) – Initial Disclosure of Individuals and Systems with Discoverable Information

Defendants have failed to disclose the identity of individuals likely to have discoverable information, including personnel operating ambulances, trains, aircraft, and SDK surveillance systems, despite being on notice since at least March 25, 2025 via Rec. Doc. 108 and direct preservation notices.

**B. Rule 37(a) – Motion to Compel Disclosure and Sanctions**

Plaintiff now moves to compel such disclosure. Rule 37(a)(3)(A) authorizes the Court to compel identification of witnesses and production of electronic records. Given the coordinated refusal to acknowledge the surveillance activities—including use of ambulances, aircraft, and real-time telemetry systems—sanctions and immediate compliance orders are appropriate.

**C. Rule 60(b)(3) and 60(d)(3) – Relief from Judgment and Fraud on the Court**

Plaintiff reserves the right to seek vacatur of prior rulings, including Rec. Doc. 109, on the basis of fraud, misrepresentation, and suppression of evidence. A coordinated effort to conceal the shadow stream system and Defendant involvement has prejudiced Plaintiff and defrauded the judicial process.

**D. 42 U.S.C. § 1983 – Color of Law Surveillance, Retaliation, and Psychological Warfare**

13

The coordinated deployment of emergency vehicles, public transportation infrastructure, and digital surveillance constitutes state-actor conduct under ***Monell v. Department of Social Services***, 436 U.S. 658 (1978). Where state-linked actors or private parties act jointly to violate constitutional rights, § 1983 provides a direct cause of action.

**E. RICO (18 U.S.C. § 1962), Wiretap Act (18 U.S.C. § 2511), Stored Communications Act (18 U.S.C. § 2701)**

The repeated and cross-domain nature of the surveillance—including SDK-level telemetry, WebSocket streaming, and real-time geo-targeting—meets the criteria for pattern-of-practice enterprise conduct, with each transmission constituting an independent violation under federal privacy statutes.

**F. Torture Victim Protection Act (TVPA)**

The use of surveillance infrastructure for psychological torment, targeted intimidation, and reputational defamation constitutes actionable conduct under the TVPA, particularly where institutional power is used to retaliate against a civilian through manipulation of emergency and infrastructure assets.

**G. State Tort Claims – IIED, Invasion of Privacy, Defamation, Negligent Supervision**

Under Louisiana Civil Code articles 2315–2316, Plaintiff states claims for intentional infliction of emotional distress, invasion of seclusion, reputational damage, and systemic failure to supervise operators acting with malice or indifference.

The legal framework mandates immediate action: the Court has authority to compel identity, terminate involvement, enforce digital and physical boundaries, and order production of the shadow stream infrastructure that Defendants have used to torment and monitor Plaintiff under the veil of institutional legitimacy.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hiran Rodriguez, appearing sui juris, respectfully prays that this Honorable Court grant the following relief:

1. Order each named Defendant—including but not limited to LCMC Healthcare Partners, LLC, Kansas City Southern Railway Company, Meta Platforms, Inc., Third District Volunteer Fire Department, Jefferson Parish Sheriff's Office, and X Corp.—to produce, within ten (10) days:

   - The full legal names, employee numbers, and employment status of each operator identified herein as John Doe Defendants #1 through #7;

   - All dispatch logs, incident reports, GPS pathing, access logs, and sensor telemetry from:

- Ambulance Unit #156 (April 19, 2025, 4:43 PM CDT);

- CN Engine #5673 (March 12, 2025, 9:12–9:28 PM CDT);

- Aircraft N16362 and MOJO30 (April 16, 2025);

- All Facebook/Instagram SDK telemetry endpoints and recorded outbound sessions tied to Plaintiff's devices;

2. Compel full disclosure of the software, servers, routing infrastructure, and access permissions underlying the "shadow stream" surveillance system—defined as any shared enterprise-level data flow or monitoring system used to observe Plaintiff's real-world or digital behavior;

3. Order the immediate termination of all Doe Defendants upon identification, including:

- LCMC ambulance operators;

- CN train engineers and yard dispatchers;

- Aircraft surveillance pilots;

- Meta Platforms LiveOps or SDK engineers implicated in persistent unauthorized behavioral telemetry;

4. Issue an evidentiary hearing and preservation order directing all Defendants to preserve all records, digital traces, server access, and communications related to the above incidents for the period January 1, 2025, through present;

5. Sanction Defendants pursuant to Rule 37(b) for refusal to disclose required identity and infrastructure information, and for spoliation of digital evidence;

6. Award Plaintiff compensatory damages of no less than $50,000,000.00 against each participating Defendant for constitutional injury, emotional distress, invasion of privacy, reputational harm, and enterprise-level retaliation;

7. Award punitive damages sufficient to deter future enterprise surveillance against civilians and pro se litigants;

8. Grant such further relief as may be just and equitable under the circumstances.

## VI. CERTIFICATE OF SERVICE

I, **Hiran Rodriguez**, hereby certify that on this **19th day of April, 2025**, a true and correct copy of the foregoing **Motion to Compel Disclosure of Enterprise Surveillance Infrastructure, Identify and Terminate Targeted Operators, and for Comprehensive Relief** was submitted

via the **Electronic Document Submission System (EDSS)** of the **United States District Court for the Eastern District of Louisiana**. Pursuant to Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule 5.4, notice of this filing will be electronically served via CM/ECF to all counsel of record who have appeared in this matter.

Respectfully submitted this **19th day of April, 2025.**

*Hiran Rodriguez*

/s/ HIRAN RODRIGUEZ

**HIRAN RODRIGUEZ,** *Sui Juris*

*Pro Se Plaintiff*

820 Grove Avenue

Metairie, Louisiana, 70003-7024

(504) 203-8459

hiranrodriguez@outlook.com

**All Rights Reserved UCC 1-308**

**Without Prejudice Without Recourse**

Preserving All Claims for Judicial Misconduct, Procedural Irregularity, and Constitutional Injury Under 28 U.S.C. §§ 144, 455, and 351; and reserving all rights to appeal, object, and seek sanctions under Rule 11, Rule 55, Rule 60(b), and Article III.

**No Joinder to any corporate, commercial, administrative, or inferior jurisdiction.**

**No tacit agreement presumed; no consent granted where none is explicitly expressed.**

20

# VII. EXHIBIT INDEX

| Exhibit | Title | Description |
|---|---|---|
| A - (Rec. Doc. 31-1)<br><br>B - (Rec. Doc. 40-3)<br><br>Rec. Doc. 91<br><br>A - (Rec. Doc. 130-1) | Psychological Warfare, Retaliation, and Defamation | Narrative and photographic documentation of pattern-based retaliation and harm. |
| RVMP-0001 to RVMP-0002<br><br>D-1 to D-4 | Meta SDK Telemetry & Streaming Evidence | HAR logs, outbound sessions, WebSocket, and endpoint analysis. |
| E-2 | Ambulance Surveillance – LCMC Unit #156 | Photos and timeline of unauthorized proximity by LCMC emergency vehicle. |
| F (filed under Seal) | Sex Offender Defamation | Evidence of targeted reputational injury and related psychological damage. |
| Rec.Doc. 80 | CN Engine #5673 – March 12–13, 2025 | Photo/video evidence of nighttime rail harassment tied to Doe Defendants. |
| I | Aircraft Surveillance Patterns – N16362, MOJO30 | Screenshots and ADS-B telemetry of low-altitude aerial targeting events. |
| Rec. Doc. 108 | Notice of Submission of Surveillance Evidence (OneDrive Folder) | Court-filed notification of shared video/audio archive with all counsel of record titled "Ongoing Evidence of Noise Harassment and Surveillance - March, 2025" https://1drv.ms/a/c/243992343779c7c4/EvztifyfXCRBscVzHdNVPQwBeuPfbIkspf6yen2us96Hzw |
| G-1 | Timestamped record of retaliatory pattern | Retaliation, Enterprise Intimidation, and failure to act by Jefferson Parish Sheriff's Office. 911 call (April 14, 2025) |
| G-2 | Audio-Visual Evidence of Retaliatory Train Horn Assault (April 14, 2025) | Real-time surveillance-based retaliation following protected legal action and law enforcement notification |