**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

**HIRAN RODRIGUEZ,**

PLAINTIFF

V.

**META PLATFORMS, INC.,** *ET AL.*

DEFENDANTS

CIVIL ACTION NO. 2:25-cv-00197

SECTION A

JUDGE JAY C. ZAINEY

DIVISION 2

MAGISTRATE JUDGE

DONNA PHILLIPS CURRAULT

JURY TRIAL DEMANDED

# <u>Rule 60(d)(3) Motion for Relief from Judgment Due to</u>

# <u>Fraud on the Court</u>

**NOW INTO COURT,** comes Plaintiff **Hiran Rodriguez,** *pro se*, who respectfully moves for relief from the judgment and orders dismissing his case, pursuant to Federal Rule of Civil Procedure 60(d)(3), on the grounds of **fraud on the court**. This motion is necessitated by egregious misconduct involving the Clerk's Office and judicial officers – including District Judge Jay C. Zainey and Magistrate Judge Donna Phillips Currault – which has subverted the integrity of these proceedings. In support of this motion, Plaintiff states as follows:

**Introduction and Background**

Plaintiff's § 1983 civil rights action was improperly derailed through a coordinated scheme of docket manipulation, prejudicial ex parte orders, and obstruction of Plaintiff's access to the Court's filing systems. The Clerk's Office, acting in concert with the Court, altered and misrepresented Plaintiff's filings on the record, while pre-preparing judicial orders to thwart Plaintiff's case before his filings were even reviewed . During critical periods in April 2025, Plaintiff – a pro se litigant dependent on the Court's Electronic Document Submission System (EDSS) – was deliberately denied access to filing, preventing him from timely opposing or informing the Court of these irregularities. This misconduct culminated in dismissal orders issued without proper process, designed to coerce Plaintiff into abandoning his preserved objections and amend his complaint under duress, thereby waiving his rights. Such actions constitute a fraud on the court of the highest order, perpetrated by officers of the court themselves, and demand immediate vacatur of the judgment, reinstatement of the case, and investigation into those responsible.

Plaintiff has previously alerted the Court and judicial authorities to these issues. He submitted sworn declarations and complaints documenting clerk obstruction and judicial retaliation, including a detailed declaration in early May 2025 and correspondence to the Chief Judge on April 30, 2025 . Those submissions describe how Clerk's Office staff (in the Pro Se unit) repeatedly impeded Plaintiff's filings and even indicated that pre-signed court orders relating to Plaintiff's case were "on hand" before Plaintiff's April 30 submissions were processed . In short, the record shows a pattern of procedural sabotage: filings not being docketed or being altered, and orders being issued in a manner suggesting the outcome was decided in advance. The specific instances of fraud on the court are outlined below.

**Specific Fraudulent Conduct**

**1. Alteration and Misrepresentation of Docket Entries (Rec. Docs. 182 & 183):** On April 30, 2025, Plaintiff attempted to file a high-resolution, color affidavit with an exhibit via the EDSS. Instead of docketing this submission, the Clerk entered Rec. Doc. 182 merely as a cryptic placeholder or receipt, omitting the actual document entirely . Recognizing that his filing had not been properly entered, Plaintiff promptly re-submitted the affidavit the same day through EDSS (with settings to prevent any automated conversion). However, the document that appeared on the docket as Rec. Doc. 183 was not the document Plaintiff submitted. It was a materially altered version of his affidavit – converted to low-quality grayscale, with degraded visual elements and formatting changes . Plaintiff never authorized or approved any such alteration. The result is that the official record contains a

tainted, falsified version of Plaintiff's evidence, rather than the original affidavit he filed .
This unexplained tampering with Plaintiff's filing – effectively a falsification of evidence
in the record – was done by court personnel after submission and without notice to
Plaintiff . Such conduct strikes at the heart of the Court's integrity, as it misled the Court
(and any reviewing body) about the true contents of Plaintiff's submission.

**2. Pre-Prepared and Retaliatory Orders (Rec. Docs. 186 & 187):** In an extraordinary move,
immediately after Plaintiff's filings on April 30, 2025, the Court (through Judges Zainey and/or
Currault) issued two sua sponte orders – Rec. Doc. 186 and Rec. Doc. 187 – which appear to
have been prepared in advance to thwart Plaintiff's case . These orders were entered on the
docket the same day (April 30, 2025) and were highly unusual and punitive in nature. Rec. Doc.
186 prohibited Plaintiff from filing any document in this case other than a single, court-ordered
"amended complaint." It expressly barred Plaintiff from making any other filings – effectively
gagging Plaintiff's ability to submit motions, evidence, or even objections in his own case . Rec.
Doc. 187, issued concurrently, further ordered that Plaintiff "shall file no documents
electronically" and that only in-person or mailed filings to the Clerk's Pro Se unit would be
accepted . This had the effect of immediately suspending Plaintiff's EDSS access, cutting off the
only timely filing method available to him as a pro se litigant . These two orders, read together,
were clearly aimed at crippling Plaintiff's ability to advocate his case: Order 186 forced Plaintiff
into a corner – to rewrite his complaint – while Order 187 erected additional hurdles by banning
electronic submissions. Notably, the Clerk's Office admitted that at least one of these orders was
already in hand before Plaintiff's filings were reviewed, indicating an ex parte communication or
foreknowledge from chambers that Plaintiff was about to file and would be preemptively

silenced . The timing and content of Rec. Docs. 186–187 strongly suggest they were issued in retaliation for Plaintiff's persistence in filing and to force compliance with an outcome preordained by the Court, rather than any fair adjudication of the merits .

**3. Obstruction of Access to Filing (EDSS Outages and Clerk Interference):** Plaintiff's ability to respond to Court deadlines and orders was further undermined by systemic obstruction of the Electronic Document Submission System. From about April 17, 2025 through April 25, 2025 – a critical window during which Plaintiff was attempting to make timely filings – the EDSS portal was repeatedly unavailable or unresponsive, displaying error messages and rejecting Plaintiff's submissions. The Clerk's Office characterized this as a "maintenance" outage, but failed to provide advance notice or alternative accommodations specific to Plaintiff's pending deadlines . Plaintiff experienced multiple failed submission attempts (documented by support reference IDs) during this period . The lack of EDSS access effectively prevented Plaintiff, the sole party not on ECF, from filing motions or oppositions in a timely manner, while defendants (with full CM/ECF access) had no such impediments. Compounding this, the Clerk's Office rejected certain filings for arbitrary technical reasons (such as purported formatting or titling issues) that had no basis in any rule. This concerted interference ensured that, by the time the Court issued the April 30 orders, Plaintiff had been deprived of any meaningful opportunity to be heard. The pattern of EDSS obstruction, combined with the clerk's alteration of filings, shows an administrative apparatus actively working to shut Plaintiff out of his own case. Such actions directly impinged on Plaintiff's constitutional right of access to the courts and procedural due process. They also violate the Clerk's ministerial duty to docket filings impartially and timely.

**4. Judicial Misconduct and Bias (Violation of 28 U.S.C. § 455 & Due Process):** The involvement of Judge Zainey (and by extension, Magistrate Judge Currault) in these events

points to deep-seated judicial bias and misconduct. Under 28 U.S.C. § 455(a), a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned. Here, not only might a reasonable observer question impartiality – the record demonstrates actual partiality and prejudgment. Judge Zainey's chambers seemingly directed or approved the Clerk's irregular handling of Plaintiff's filings, and Judge Zainey signed off on (if not instigated) the draconian orders at Rec. 186 and 187 designed to halt Plaintiff's case. The ex parte preparation of a ruling before seeing Plaintiff's filings is incompatible with the fair administration of justice . Moreover, Plaintiff had earlier filed a formal Motion to Recuse Judge Zainey (Rec. Doc. 91) detailing concrete evidence of bias – including Judge Zainey's public associations with a Defendant and a pattern of adverse rulings against Plaintiff immediately after media coverage involving the Judge . Rather than seriously address these concerns, Judge Zainey summarily denied recusal, brushing aside the appearance of impropriety. Magistrate Judge Currault, tasked with impartial pretrial management, instead enabled this misconduct by failing to check the Clerk's actions and issuing or endorsing rulings that punished Plaintiff for seeking to vindicate his rights. Their conduct violated Plaintiff's Fifth Amendment right to due process, which guarantees an impartial tribunal and a fair chance to be heard. No litigant should have to contend with the judge effectively becoming an adversary, but that is precisely what occurred here. The dismissal of Plaintiff's claims was orchestrated by those entrusted to be neutral – a fundamental structural error undermining the legitimacy of the judgment.

**5. Dismissals Without Due Process – Forcing Amendment to Waive Objections:** The manner in which Plaintiff's case was "dismissed" exemplifies the fraud on the court. The April 30, 2025 orders sought to dismiss Plaintiff's Complaint without a fair hearing, yet enticed/compelled Plaintiff to file an "amended complaint" under extreme restrictions. By doing so, the Court

attempted to strip Plaintiff of his preserved objections and appellate rights. At the time these orders were issued, Plaintiff had several objections and motions pending on the record, including objections to a magistrate's recommendation. Instead of adjudicating those objections on the merits or allowing the normal process of objection and review, the Court tried to moot them by coercing Plaintiff to start over (amend). The price of not amending was implied to be a final dismissal with prejudice – essentially holding Plaintiff's entire case hostage. This stratagem is procedurally improper and constitutionally repugnant. A plaintiff who believes his original complaint was wrongly dismissed (or his claims wrongly ignored) has the right to stand on that complaint and seek appellate review, rather than amend and waive errors. By issuing orders that preemptively dismissed the case and only permitted revival if Plaintiff acceded to the Court's terms, Judge Zainey and Magistrate Currault betrayed the judicial process. The dismissal orders were issued ex parte, without notice or an opportunity to be heard, and in the absence of any motion from Defendants. They lacked findings of fact or law justifying such extreme measures. In substance, the Court manufactured a dismissal scenario to evade scrutiny of its earlier decisions and to put Plaintiff at a litigation disadvantage. This is not merely error; it is a deliberate perversion of the judicial process, i.e., fraud on the court.

Each of the above acts, on its own, is gravely troubling. Taken together, they paint a cohesive picture of a concerted fraud on the Court itself. The Clerk's Office – which is supposed to be a neutral administrator – and the Judges – who are bound to be neutral arbiters – collaborated to sabotage the fair adjudication of this case. Such conduct "involves far more than an injury to a single litigant"; rather, it is "a wrong against the institutions set up to protect and safeguard the

public". It defiles the court's integrity and undermines the public's trust that our courts adjudicate cases impartially and according to law.


**Legal Standard for Fraud on the Court**


Federal Rule of Civil Procedure 60(d)(3) recognizes the inherent power of courts to set aside a judgment for "fraud on the court." This provision is effectively a savings clause – it permits relief for fraud on the court without any strict time limit and even outside the usual one-year limit for Rule 60(b)(3) fraud motions . Courts have emphasized that fraud on the court is a narrowly defined and deeply egregious category of wrongdoing. It encompasses "only that species of fraud which does or attempts to, defile the court itself, or is perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task" . In other words, it is reserved for extreme conduct that strikes at the very heart of the court's integrity and the ability of the court to function impartially.


Generally speaking, "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by an officer of the court, will constitute fraud on the court." Ordinary fraud between parties or nondisclosure in discovery, for example, does not reach this high bar. Instead, there must be a deliberately planned and carefully executed scheme to corrupt the judicial process. The Fifth Circuit has articulated that it requires "an unconscionable plan or scheme which is designed to improperly influence the court in its decision" (quoting England v. Doyle, 281 F.2d 304, 309 (9th Cir. 1960)). When such a scheme

is shown – particularly if carried out by court officers, such as judges, clerks, or attorneys – the resulting judgment cannot be allowed to stand.

Importantly, in cases of fraud on the court, the federal courts' inherent powers are at their broadest. The Supreme Court has long held that courts are not impotent to redress fraud that touches the judicial system itself. In Hazel-Atlas Glass Co. v. Hartford-Empire Co., a landmark case, the Supreme Court vacated a judgment years after its entry upon discovering that the victory had been procured by a fraudulent scheme involving fabricated evidence presented to the appellate court. The Court proclaimed that "tampering with the administration of justice in [such] a manner...involves far more than an injury to a single litigant" – "[i]t is a wrong against the institutions set up to protect and safeguard the public, [and] fraud cannot complacently be tolerated" . The Court emphasized that "the public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." . In other words, when faced with a fraud that corrupts the judicial process, courts have both the power and the duty to undo the tainted result, no matter how much time has passed or how procedural rules might normally restrict relief.

Likewise, in Chambers v. NASCO, Inc., the Supreme Court reaffirmed that a federal court may wield its inherent authority to address a broad range of bad-faith conduct, even if that conduct might also be sanctionable under specific rules. In that case, the defendant engaged in a sustained campaign of fraud and obstruction throughout the litigation. The

Court approved severe sanctions, noting that the defendant's "entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court." . When a litigant's actions defile the judicial system, the Court need not stay its hand; it may fashion appropriate relief to protect the integrity of its proceedings . Fraud on the court thus falls within the inherent power of the court to vacate its own judgments in order to prevent a grave miscarriage of justice (Hazel-Atlas, 322 U.S. at 245-46).

In addition, a judge's overt bias or failure to recuse when required can itself justify vacating a judgment, even if not labeled "fraud." Under 28 U.S.C. § 455, judges must abstain from cases where their impartiality is in doubt or they have an interest or bias. The Supreme Court has recognized that where a judge violates § 455 and a judgment is later challenged, relief under Rule 60(b) or (d) may be warranted to protect the fairness and appearance of justice in the proceedings (Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988)). A judgment issued by a judge who should have been disqualified is strongly disfavored, as it undermines the legitimacy of the outcome. Here, the misconduct by Judge Zainey and Magistrate Currault is intertwined with the fraudulent manipulation of the case; their partiality (and perhaps personal animus) led to the procedural abuses now at issue. Thus, the constitutional dimension of this fraud on the court – a judge abandoning neutrality – further compels relief. The Due Process Clause of the Fifth Amendment guarantees litigants the right to a neutral decision-maker and a fair chance to present their case. When those guarantees are eviscerated by those running the court, any resulting judgment is constitutionally infirm.

In sum, the law is clear that fraud on the court "embraces only the most egregious misconduct" – but when such misconduct is present, a court must act decisively. This case presents precisely the circumstance for which Rule 60(d)(3) exists. The machinery of justice in this Court was deliberately subverted from within. No court can permit a judgment to stand when it was obtained in a manner that "defile[d] the court itself." The following Argument section applies these principles to the facts at hand, demonstrating that relief is not only justified but required to vindicate the integrity of this Court.

**Argument**

**I. Fraud on the Court Has Occurred and the Judgment is Void for Lack of Integrity**

The record before this Court establishes a deliberate scheme of fraud perpetrated by court officers that prevented the Court from performing its impartial adjudicative function. The combination of falsified docket entries (Rec. 182–183), preemptive and baseless court orders (Rec. 186–187), and intentional blocking of Plaintiff's filings was calculated to improperly influence the Court's decisions and deprive Plaintiff of a fair proceeding. This meets every element of "fraud on the court" as defined by controlling precedent.

First, the misconduct was carried out by those owing a duty of fidelity to the court: court personnel and judges themselves. A fraud on the court typically involves "officers of the

court" committing the deception, such as clerks manipulating filings or attorneys fabricating evidence . Here, Clerk's Office staff altered Plaintiff's submissions and misrepresented material facts on the docket – effectively fabricating evidence in the form of a falsified court record. Even more egregiously, a United States District Judge (Zainey) and Magistrate Judge (Currault) appear to have coordinated to issue sham orders that short-circuited due process. If bribery of a judge or fabrication of evidence by an attorney are classic frauds on the court, then a judge and clerk colluding to predetermine the outcome of a case and falsify the record is at least equally egregious, if not more so . The impartial task of adjudication was abandoned; the decision had effectively been made behind closed doors, and the normal adversarial process was sabotaged.

Second, there was an "unconscionable plan or scheme" aimed at influencing the court's decisions . The actions in question were not random errors or good-faith mistakes; they formed a concerted sequence: (a) prevent Plaintiff from filing timely (EDSS outage), (b) when he manages to file, intercept and alter the filings (Rec. 182–183 placeholder and doctored document), (c) immediately issue orders (186–187) that remove the case from the normal track and foreclose Plaintiff's right to oppose or object, and (d) thereby pave the way to dismiss the case with minimal resistance or scrutiny. This scheme is "unconscionable" by any measure. It was designed specifically to thwart the Court's ability to decide the case on a true and complete record – because the decision had already been orchestrated extrajudicially. By implementing this scheme, the Court's officers improperly influenced the Court's rulings: for instance, the Judge (relying on a

distorted docket) found justification to impose filing sanctions and demand an amended complaint, which in turn would dispose of Plaintiff's existing motions and objections. The normal judicial machinery – where a judge considers the parties' actual submissions, applies the law, and rules accordingly – was replaced by a charade. In essence, the Court was deceived and manipulated from within, as in Hazel-Atlas, where a falsified article corrupted the appellate court's judgment . Here, the deception is even more direct, as it involves the very contents of the Court's own docket and orders.

Third, the impact on the proceeding was profound and fundamentally unfair. Plaintiff was deprived of any meaningful opportunity to present his case or challenge the Court's actions, as every avenue to do so was cut off by design. The docket tampering ensured that Plaintiff's evidence (his affidavit) was never actually before the Court in its true form. The preemptive orders ensured that Plaintiff could not file anything to call out the wrongdoing without violating those very orders. (In fact, Plaintiff had to resort to emergency measures – including faxing letters to the Chief Judge and filing this motion via alternative means – to even bring these issues to light, since he was technically barred from filing motions except an amended complaint.) The resulting judgment of dismissal, therefore, was not a product of an adversarial testing of the claims or a fair application of the law; it was the fruit of a poisoned tree, yielded by intimidation and deceit. Such a judgment cannot stand. As Justice Black wrote in Hazel-Atlas, courts of justice should not be "mute and helpless victims of deception", and when confronted with fraud, they must act to "preserve the integrity of the judicial process" .

In view of this, the Court has the power under Rule 60(d)(3) – indeed, the obligation – to vacate all orders and judgments procured by this fraud. This includes the dismissal orders (Rec. 186 and 187, and any judgment entered pursuant to them). The fraud here "defiles the court itself," which is the quintessential case for invoking Rule 60(d)(3) . Plaintiff's situation is far more severe than a party's perjury or nondisclosure; it involves the Court's own processes being corrupted. If this does not qualify as fraud on the court, it is hard to imagine what would.

Defendants might argue (if heard on this motion) that Plaintiff is simply unhappy with adverse rulings. But this motion is not about the correctness of the Court's rulings – it is about the improper and unlawful manner in which those rulings came about. Even a correctly decided case must be overturned if it was decided through corrupt means. In Hazel-Atlas, for example, the underlying patent issue might have been debatable, but the judgment was vacated because it was obtained by fraud. Here, we have a civil rights plaintiff who never had a fair chance; the process was rigged against him by those running the process. No court should countenance such a scenario. The Fifth Circuit has stressed that fraud on the court is reserved for "only the most egregious misconduct" – and the misconduct here is as egregious as it gets, short of outright bribery. It involves deception by court officers and a betrayal of the judicial office's duty of impartiality.

## II. Judicial Officers Violated 28 U.S.C. § 455 and Due Process, Further Undermining the Validity of the Judgment

The involvement of Judge Zainey and Magistrate Judge Currault in the fraudulent scheme is another independent ground for relief and underscores the need for vacatur. A judge who has participated in ex parte strategizing against a litigant, or whose staff has colluded to block a party's filings, cannot be neutral. This conduct flatly violates 28 U.S.C. § 455(a) (which requires disqualification for even the appearance of partiality) and § 455(b)(1) (which mandates recusal if the judge has personal bias or knowledge of disputed facts from an extrajudicial source). By choosing to remain on the case and actively undermine Plaintiff's position, Judge Zainey and Magistrate Currault engaged in misconduct that nullifies their orders.

When a judge fails to recuse despite a clear conflict or bias, any ensuing judgment is suspect. In Liljeberg, the Supreme Court held that a judgment should be vacated under Rule 60(b) when a judge violated § 455(a), after weighing factors like the risk of injustice and erosion of public confidence in the judiciary. Here, the risk of injustice is not merely theoretical – injustice actually occurred. Plaintiff suffered an adverse judgment not because of the merits of his claims, but because the presiding judge(s) were improperly motivated to dismiss his case. The appearance of justice was obliterated: a reasonable person apprised of the facts would conclude that the Court was biased and had a personal stake in silencing Plaintiff. Indeed, Plaintiff's earlier recusal motion laid out substantial concerns about bias that should have led any judge to step aside . The refusal to do so, followed by the extreme actions on April 30, confirms that those concerns were valid.

Due process is violated when a judge is biased or has pre-judged the outcome. Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), though dealing with a different context (campaign contributions), reaffirmed that profound bias "poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." Here, the judges' actions show actual prejudgment: the Court anticipated Plaintiff's filings and preemptively issued orders to negate them. That is as clear an indication of prejudgment as one can imagine. Additionally, due process requires that a litigant be given notice and an opportunity to be heard before being deprived of his claims or rights. The dismissal orders were issued without notice or a hearing. Plaintiff was not given an opportunity to contest the severe sanctions imposed (filing restrictions and effectively a dismissal), either before or after the fact. This is the definition of a star chamber proceeding, not a fair hearing.

Because Judges Zainey and Currault's actions so infected the proceedings with unfairness, the only appropriate remedy is to vacate all orders they issued in this matter and start anew before an impartial judge. The Court should consider referring the matter to the Chief Judge of this District or another Article III judge for handling, as Judges Zainey and Currault are, respectfully, material witnesses and subjects of the allegations. They cannot sit in judgment of their own conduct. This motion itself is a testament to the extent of the breakdown in normal procedure; it seeks relief from the very judges whose conduct is at issue. Therefore, Plaintiff urges that, as part of the relief, the Court invoke any applicable procedure (under local rules or 28 U.S.C. §§ 144, 455, etc.) to ensure that

adjudication of this motion and all further proceedings are done by a disinterested judicial officer. The integrity of the courts demands nothing less.

## III. The Integrity of the Judicial Process Requires Full Vacatur and Investigative Measures

At its core, this motion is about restoring integrity and public trust. The fraud on the court perpetrated here is not only a wrong to Plaintiff, but a wrong to the justice system. As the Supreme Court observed in Hazel-Atlas, society at large has an interest in ensuring that judgments are not the product of fraud . Letting a judgment procured by fraud on the court stand would send a message that litigants can be deprived of their rights by behind-the-scenes manipulations with no remedy. That would be an unacceptable outcome.

Accordingly, Plaintiff requests that the Court grant the following relief:

• Vacatur of Dismissal Orders and Judgment: Vacate and set aside Rec. Docs. 186 and 187, as well as any judgment or order of dismissal entered in this case, with prejudice or without, that resulted from those filings. The case should be restored to the posture it was in before the fraud took place. This means reinstating Plaintiff's Complaint (and/or the most recent viable amended complaint prior to dismissal) and all motions or objections that were pending at the time of the fraudulent orders. In effect, rewind the docket to the point before Plaintiff's filings were obstructed and the retaliatory orders were issued.

• Reinstatement of Plaintiff's Filing Rights: Immediately lift any restrictions on Plaintiff's ability to file via the EDSS or CM/ECF systems. Plaintiff, as a pro se litigant, should have the same access to electronic filing as other pro se litigants (which was wrongly taken from him). The Court should ensure that Plaintiff can file documents unhindered, so that the case can proceed fairly upon reinstatement.

• Assignment to a New Judge: To preserve the appearance and reality of impartial justice, direct that upon reinstatement, the case be reassigned to a different District Judge (and Magistrate Judge) than those implicated in this motion. This Court has authority to transfer the case to another judge on its own initiative, especially in extraordinary circumstances of possible bias or conflict. Given that the judgment is being set aside for fraud involving court officers, no further orders in this case should be rendered by the accused judicial officers. Reassignment will provide a clean slate and ensure that future proceedings are untainted.

• Investigation and Referral: Plaintiff requests that the Court formally refer this matter for investigation and any appropriate disciplinary or legal action. This may include notifying the Chief Judge of the Eastern District of Louisiana and the Fifth Circuit Judicial Council of the specific findings of fraud on the court, so that an inquiry under the Judicial Conduct and Disability Act (28 U.S.C. §§ 351 et seq.) can be initiated regarding Judge Zainey and Magistrate Currault. The conduct of certain Clerk's Office employees (identified in Plaintiff's filings and FOIA requests as Ms. Stacy Pecoraro, Mr. Brad Newell, and others) should likewise be examined for potential discipline or referral to the Department of Justice if federal criminal

statutes (e.g., 18 U.S.C. § 2071, which forbids altering or removing records filed in any public office, or 18 U.S.C. §§ 241–242, relating to deprivation of rights under color of law) are implicated. The Court should not sweep these egregious acts under the rug; rather, it should shine a light on them. In Chambers, the Supreme Court affirmed that courts have the power to sanction bad-faith and abusive conduct to protect their institutional integrity . Here, beyond just sanctions, a thorough investigation is warranted to identify all individuals who participated in or enabled the fraud, and to impose appropriate consequences. Only through such action can confidence in the Court be restored.

• Other Relief as Justice Requires: The Court should grant any additional relief necessary to return Plaintiff to the position he would have been in absent the fraud. This might include allowing Plaintiff to supplement the record with the original versions of any documents that were altered (such as the true original of the affidavit that was improperly docketed as Rec. 183), and permitting reasonable discovery or an evidentiary hearing to further document the fraud. While the evidence already submitted is compelling, Plaintiff is prepared to present testimony (for example, his own account, affidavits from witnesses to his filing attempts, etc.) and forensic evidence (such as metadata or logs obtained via FOIA) to conclusively establish the misconduct. The Court should utilize its flexibility and equitable powers in crafting relief (Hazel-Atlas, 322 U.S. at 248-49 , noting the inherent flexibility of equitable remedies for fraudulent judgments).

By granting this motion, the Court will affirm the principle that no litigant – even a pro se civil rights plaintiff suing powerful interests – should be deprived of justice through fraud. The public interest in transparent and fair court proceedings cannot be overstated. As the Supreme Court declared in Hazel-Atlas, "the institutions set up to protect and safeguard the public" cannot tolerate fraud without grave damage to the good order of society . Conversely, correcting such fraud showcases the judiciary's commitment to self-correction and justice.

**Conclusion**

For the foregoing reasons, Plaintiff Hiran Rodriguez respectfully prays that this Motion be GRANTED in full. Specifically, Plaintiff asks that this Court:

- Vacate the fraudulent dismissal orders (Rec. Docs. 186 and 187) and any resulting judgment in this case;
- Reinstate his case and all pertinent filings to the active docket;
- Ensure the case is heard afresh by an impartial judge, with full restoration of Plaintiff's ability to file and be heard; and
- Order an appropriate inquiry into the conduct of the Clerk's Office and judicial officers involved, to prevent such a profound breach of justice from ever recurring.

Plaintiff further requests such other and further relief as may be just and equitable, including costs and any other relief to which he is entitled. Given the severity of the alleged fraud, Plaintiff respectfully requests expedited consideration of this motion. The issues raised go to the core integrity of this Court's process, and every day that the current judgment remains in place irreparably harms not only Plaintiff but the dignity of this Court.

Respectfully submitted,

*Hiran Rodriguez*    HR  05/05/2025

**Hiran Rodriguez**, Plaintiff *pro se*

820 Grove Avenue

Metairie, Louisiana 70003

Tel: (504) 203-8459

Email: hiranrodriguez@outlook.com

**Date:** May 3, 2025

**All Rights Reserved – UCC 1-308**

**Without Prejudice – Without Recourse**

Preserving all claims for judicial misconduct, procedural irregularity, and constitutional injury under 28 U.S.C. §§ 144, 455, and 351; and reserving all rights to appeal, object, and seek sanctions under Rule 11, Rule 55, Rule 60(b), and Article III.

**No Joinder to any corporate, commercial, administrative, or inferior jurisdiction.**
**No tacit agreement presumed; no consent granted where none is explicitly expressed.**

**Clarification of Filing Method:**

This submission is made via EDSS for the sole purpose of preserving Plaintiff's constitutional and procedural rights, and does not constitute consent to, or compliance with, any unlawful order, directive, or restriction issued under authority challenged pursuant to 28 U.S.C. § 455 and Rule 60(d)(3), including but not limited to Rec. Doc. 187.

## NOTICE OF SUBMISSION

PLEASE TAKE NOTICE that the undersigned, **HIRAN RODRIGUEZ**, *Pro Se*

Plaintiff, hereby submits for filing the following pleading:

- **Rule 60(d)(3) Motion for Relief from Judgment Due to Fraud on the Court**

This submission is made via the **Electronic Document Submission System (EDSS)**

solely to preserve Plaintiff's constitutional and procedural rights, and does not constitute

acquiescence to or waiver of any objection to Rec. Doc. 187 or any directive issued under

judicial authority challenged under 28 U.S.C. §§ 144, 455 and Rule 60(d)(3).

Respectfully submitted,

*Hiran Rodriguez*

/s/ **Hiran Rodriguez**

Hiran Rodriguez, *Pro Se*

820 Grove Avenue

Metairie, Louisiana 70003

(504) 203-8459

hiranrodriguez@outlook.com

**All Rights Reserved – UCC 1-308**

**Without Prejudice – Without Recourse**

Dated: May 3, 2025

## CERTIFICATE OF SERVICE

I, **HIRAN RODRIGUEZ**, hereby certify under penalty of perjury that on this **3rd day of May, 2025**, I submitted the foregoing:

- **Notice of Submission**
- **Rule 60(d)(3) Motion for Relief from Judgment Due to Fraud on the Court**

for filing via the **Electronic Document Submission System (EDSS)** of the United States District Court for the Eastern District of Louisiana. I further certify that a true and correct copy was served by email to all known counsel of record as listed below:

*barcuri@fralawfirm.com, lcarlisle@bakerdonelson.com, scefolia@bakerdonelson.com, colin.cisco@jeffparish.net, hailey.cummiskey@arlaw.com, philip.giorlando@bswllp.com, katherine@snw.law, ekesler@bakerdonelson.com, ckrake@courington-law.com, eve.masinter@bswllp.com, vmatherne@courington-law.com, lmince@fishmanhaygood.com, suzy@snw.law, jnieset@phjlaw.com, lrodrigue@fralawfirm.com, lindsaysamuel@dwt.com, lrichard@irwinllc.com, scott@snw.law, qurquhart@irwinllc.com, roland.vandenweghe@arlaw.com*

This filing is made solely to preserve Plaintiff's rights of access and does not constitute consent to any directive or restriction issued under authority presently contested.

Respectfully submitted,

*Hiran Rodriguez* HR
05/03/2025

**/s/ Hiran Rodriguez**

Hiran Rodriguez, *Pro Se* Plaintiff

820 Grove Avenue

Metairie, Louisiana 70003

(504) 203-8459

hiranrodriguez@outlook.com

**All Rights Reserved – UCC 1-308**

**Without Prejudice – Without Recourse**

## NOTICE OF SUBMISSION

NOW INTO COURT, comes Plaintiff, **HIRAN RODRIGUEZ**, appearing *sui juris*
and *pro se*, and respectfully gives notice that the foregoing Motion or Filing shall be
submitted to the duly assigned Article III judge or any reassigned judicial officer,
consistent with Plaintiff's jurisdictional objections and previously filed Motion to
Recuse Judge Jay C. Zainey under 28 U.S.C. § 455(a) and (b) (Rec. Doc. 91), which
was denied by Judge Zainey in Rec. Doc. 100 but remains constitutionally contested
under 28 U.S.C. § 144.


This motion or filing or notice is made to preserve the record for appeal or
reinstatement and is filed without waiving any objections to the Court's prior
proceedings.


Respectfully submitted, this 5th day of May, 2025.

*Hiran Rodriguez*  HR  05/05/2025

**/s/ HIRAN RODRIGUEZ**

**HIRAN RODRIGUEZ**, *SUI JURIS*

*PRO SE PLAINTIFF*

820 Grove Avenue

Metairie, Louisiana 70003

(504) 203-8459

hiranrodriguez@outlook.com

**Dated:** May 5, 2025.

**All Rights Reserved – UCC 1-308**

**Without Prejudice – Without Recourse**

Preserving all claims for judicial misconduct, procedural irregularity, and constitutional injury under 28 U.S.C. §§ 144, 455, and 351; and reserving all rights to appeal, object, and seek sanctions under Rule 11, Rule 55, Rule 60(b), and Article III.

**No Joinder to any corporate, commercial, administrative, or inferior jurisdiction.**

**No tacit agreement presumed; no consent granted where none is explicitly expressed.**

<u>**CERTIFICATE OF SERVICE**</u>

I, **HIRAN RODRIGUEZ**, hereby certify under penalty of perjury that on this **5th day of May, 2025**, a true and correct copy of the following filings:

(1) Plaintiff's Motion to Strike Orders Issued by Judge Jay C. Zainey as Fraudulent and Void,

(2) Emergency Motion for Protective Order To Preserve Filing Access And Court Record,

(3) Motion for Entry of Rule 54(b) Judgment,

(4) Rule 60(d)(3) Motion for Relief from Judgment Due to Fraud on the Court,

(5) Renewed Motion for Entry of Default Judgment,

(6) Motion to Vacate All Orders Issued After Filing of Recusal Motion (Rec. Doc. 91),

...was mailed to the Clerk of Court and thereby served on the presiding judge, and was also electronically served to all Defendants (and/or their counsel of record). This motion or filing or notice is made to preserve the record for appeal or reinstatement and is filed without waiving any objections to the Court's prior proceedings.

**All Rights Reserved – UCC 1-308**

**Without Prejudice – Without Recourse**

Preserving all claims for judicial misconduct, procedural irregularity, and

constitutional injury under 28 U.S.C. §§ 144, 455, and 351; and reserving all

rights to appeal, object, and seek sanctions under Rule 11, Rule 55, Rule 60(b),

and Article Ill.

No Joinder to any corporate, commercial, administrative, or inferior jurisdiction.

No tacit agreement presumed; no consent granted where none is explicitly

expressed.


Respectfully submitted,

*Hiran Rodriguez*  HR  05|05|2025

**/s/ HIRAN RODRIGUEZ,** *SUI JURIS*

Hiran Rodriguez,

*Pro Se Plaintiff*

820 Grove Avenue

Metairie, Louisiana 70003

(504) 203-8459

hiranrodriguez@outlook.com

Dated: May 5, 2025

2

HIRAN RODRIGUEZ

820 Grove Ave, Metairie, LA, 70003-7024

EXPECTED DELIVERY DAY: 05/07/25
USPS TRACKING® #

9505 5145 1382 5125 6365 21



RECEIVED
MAY 08 2025
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
DEPUTY CLERK



Retail





RDC 03    0 Lb 5.00 Oz    S2324P506044-06

70130

$7.16

U.S. POSTAGE PAID
PM
KENNER, LA 70062
MAY 05, 2025





Clerk of Court
United States District Court for the Eastern District of
Louisiana
500 Poydras Street
New Orleans, Louisiana, 70130